Adams, J.
This case of Peter Sehamp v. Patrick Kennedy is here on appeal. This was an action brought in the court of common pleas to enjoin the defendant from constructing a lateral to a certain outlet ditch, or change of water course *605 in Holmes county. The pleadings as well as the agreed statement of facts show that the plaintiff owns certain real estate in Holmes county, that he ownes no real estate in Wayne county; and that he is a non-resident of Wayne county, and a resident of Holmes county; that except as to one matter,all the proceedings had looking towards the construction of the ditch and outlet of which this lateral is a part, were had by and before the commissioners of Wayne county; that the only action taken by the commissioners of Holmes county, in regard to any part of this ditch, outlet or lateral, was that they met with the commissioners of Wayne county in joint session, agreed upon the amount of money that should be paid by Wayne county to Holmes county for the use and benefit of the outlet in Holmes county; that the same was $3189.00, and that the sum has been paid by Wayne county to Holmes county. As 1 said, the facts being agreed upon, there are two matters which counsel for defendant claim play anjimportant part in this case; one of these facts is that this man Schamp, the plaintiff here, was served with a notice — the same notice with which all of the other interested parties here served, when the proceedings were commenced before the commissioners of Wayne county; and that he filed a protest or at least he filed a paper with the commissioners of Wayne county, protesting against the construction of this outlet, The. plaintiff was also present at the meeting of the two boards where this sum of money was agreed upon.
This lateral to this outlet was intended to change the course of Rush run. As it flowed formerly from the point where this lateral changes its course to its old mouth in Killbuck creek, Rush run ran to a very small extent upon the lands of plaintiff. According to the plat, the lateral is twenty-eight hundred and some odd feet long, entirely through the lands of the plaintiff. Kennedy is the contractor under the commissioners of Wayne county for the construction of this lateral, and he was about to enter upon the *606 premises of the plaintiff to make this lateral ditch, a ditch of considerable size as to depth and width,and of the length that I have indicated. The claim of the plaintiff is that this is a taking of plaintiff’s property for the public use without due process of law. The contention is made on the other side that the commissioners of Wayne county are authorized by law to construct this outlet ditch and the lateral thereto, and that all these proceedings are regular; that the plaintiff Schamp having failed to file his claim for damages with the commissioners of Wayne county and his claim for compensation, has waived his right to compensation and damages. These facts having been agreed upon, bring before this court as we think, but two questions of law.
It is claimed here that Schamp,by the service of this notice upon him, and at least by the filing of his protest with the commissioners of Wayne county, and by the fact that he was present at the joint sessions of the two boards, entered his voluntary appearance before the commissioners of Wayne county and thereby conferred jurisdiction upon them not only of his person but of bis real estate situate in Holmes county. If the jurisdiction of the commissioners of Wayne county depended alone upon the waiver or consent of Schamp, then it is clear, it is beyond question, that, while a party may confer jurisdiction of his person upon a court or board, neither consent nor Waiver of a party will confer jurisdiction either upon a court or board, of the subject matter of the suit or proceeding.
For instance, it would be absurd to claim that one of the circuit courts of Ohio could entertain original jurisdiction to foreclose a mortgage, simply because the parties entered their appearance in the circuit court, and it would be equally absurd to claim that the common pleas court of Wayne county would have jurisdiction in & foreclosure suit of lands lying wholly in Holmes county,simply because the defendant living in Holmes county, and owning the real estate in Holmes county entered his appearance in the com *607 mon pleas court of Wayne county. We think it is equally plain that if the commissioners had not the jurisdiction conferred upon them by law to construct a ditch or outlet in Holmes county, that the mere waiver or entering of appearance by Schamp in Wayne county would confer no jurisdiction upon the commissioners of Wayne county on lands lying in Holmes county. It is stated in 19 Ohio St., on page 184, that the construction of a ditch is a proceeding in rem. It affects property as well as persons. The other question is, does the law confer jurisdiction upon the commissioners of Wayne county V It would seem at first blush that there ought to be some constitutional prohibition against the commissioners of one county going into another county to construct a public improvement. We do not find any such constitutional prohibition. So far as the constitution is concerned, the legislature has the authority and is competent to authorize the commissioners of Wayne county to construct a ditch in another county. The question is: Has the legislature done so. Section 4447 of the Revised Statutes provides that the commissioners of any county may construct a ditch within such county, meaning within the county of which they are the county commissioners. Section 4448 provides that the petition for the ditch includes all spurs, laterals or branch ditches, whether specifically mentioned in the petition for the ditch or not. Section 4451a, as found in 91 Ohio Laws, 159, provides how proceedings shall be commenced, and it is to be noticed there that there is no provision for personal service on non-residents of the county. We think that by a fair construction of that act it provides for a personal service on the resident land owners of the county and for service by publication on non-resident land owners of the county. Schamp was neither a resident of Wayne county, nor a non-resident land owner of Wayne county. And section 4448 and 4448a, as found in 89 Ohio Laws,289, provides that in proceedings for joint ditches the application for them shall be made in each *608 county. Section 8 of the act that is really before us for construction provides that the funds which shall be paid by the upper county to the lower county shall be used in a certain way, and says that the fund so paid shall be used in the enlargement of said outlet ditch, if any enlargement thereof be necessary, on the account of the additional water emptying into it from the upper county; or for the construction of the outlet ditch into the lower county if none, exists. These being the plain terms of that act, then the $3,189.00 which the law required Wayne county to pay Holme county after they had agreed upon the amount, having been paid to Holmes county, that sum could be used either in the enlargement of the Outlet ditch if that be necessary, where the outlet ditch already exists; or if none exists, that, it shall be,used for the construction of the outlet ditch. And it is claimed on behalf of this plaintiff that it clearly appears that the money having been paid to the county commissioners of Holmes county to be expended in the construction of the outlet ditch, that it must be expended by the commissioners of Holmes county. But counsel for defendant rely upon section 1 and 10 of the act as found in 91 Ohio Laws, page 261. Section 1 says: “That in all cases-where the commissioners of any county in this state shall cause to be constructed or enlarged, or cleaned out or repaired, any ditch, drain, or watercourse the water from which flows into an adjoining county,” That is the first paragraph. That is where the commissioners of the upper county are about to construct or enlarge a ditch which flows-into an adjoining county . Now what does that mean, “Being constructed in an adjoining county by the upper county,” or being constructed in an upper county by the proper officials of that upper county, And the second paragraph: “And in all cases where the commissioners of any county in this state shall cause to be constructed, enlarged, cleaned out or repaired, any ditch, drain cr watercourse which is or may be an outlet for any ditch, drain, watercourse of lands in an upper county.” The second case is where the lower county is constructing or about to construct *609 a ditch in the lower county which will be an outlet for the waters of the upper county, or an outlet for the ditch of the upper county. In either of these cases it says,“the commissioners of such upper county shall pay to the commissioners of such lower county, such sum of money as may be agreed upon by the commissioners of both counties for the use and benefit of such outlet. ” And the third paragraph provides that “ the commissioners of said upper county shall apportion that sum to lands benefited in their county.” And in the case at bar that amount has been agreed upon. It says; “The sum which the commissioners of said upper county shall pay to the commissioners of said lower county, shall be determined at a joint meeting of the commissioners of the said upper and lower counties upon the line of said ditch, drain or water course, and a refusal of a majority of the board of commissioners of the said upper county to agree, or failure by them to meet, act or take part in the meeting with the commissioners of said lower county upon ten days notice by the commissioners of said lower county upon the commissioners of said upper county, to determine what sum the commissioners of said upper county should pay the commissioners of said lower county, shall be prima facis eivdence of their failure to agree or pay.” It will be noticed that there is no provision by which the commissionEers of the upper county can force the commissioners of the ower county either to attend a meeting of that kind or to efuse to attend, The provisions of the act are that the notce of such meeting shall be by the commissioners of the lower county upon the commissioners of the upper county.' And then it says;: “and ditches, drains or water courses which provide drainage, or when constructed will provide Irainage for land in more than one county, may be contracted, enlarged, cleaned or repaired, as provided in this ict and the laws prescribed for the constructing, enlarging, ileaning out or repairing single county ditches, drains or watercourses.
So far in this act we have discovered no scheme or plan y which these ditches which will drain lands in two coun. ,ies shall be constructed. Here it says: “May be constructed as provided in this act.” We will have to look *610 elsewhere for the provisions of this act which provide for their construction, and for the law for constructing or repairing single county ditches, Then we come to section 10. “All proceedings for the construction, cleaning put, repairing or enlarging either of said ditches, in either the upper or lower counties, whether or not the same have been originally constructed as joint ditches, or whether or not the ditch to be constructed might be a joint ditch, may be commenced and constructed in the manner prescribed in this act and the law prescribed for single county ditches.”
The law prescribed for single county ditches provides that the commissioners of any county may construct the ditch within their county, and so far as we have come, this act only adds to that showing how they may get together in certain cases and agree upon the sum that is to be paid by the one county to the other. But in addition to the manner of procedure prescribed in this act for the construction, enlarging, cleaning out or repairing of any ditch, which furnishes or may furnish drainage for more than one county, proceedings shall be commenced and conducted in the manner prescribed by law for the construction of joint ditches, whenever a majority of each board of commissioners of such counties shall sc agree.” In the case at bar, there was no agreement and no attempt for agreement in the construction of a joint ditch. The commissioners of Holmes county took no action in relation to this ditch except that they took the money agreed upon. “But in all cases where such commissioners do not agree or determine to proceed under the laws for the construction of joint ditches, and the board of commissioners of said lower county unanimously agree that such improvement is necessary or will be conducive to the public health, convenience, or welfare, and the line described is the best route, then all such proceedings in reference thereto, 'shall be conducted as provided in this act and the laws for single county ditches.” There has never been any unanimous agreement by the board of commissioners of this lower county that this ditch is conducive to the public health, convenience or welfare, They have taken no action, This section winds up as follows: “Such proceedings to be conducted by the commissioners of said lower county. ” It is claimed in argument here that the ditch law is intended to be a system; that the legislature has intended to pro *611 vide a system for the construction of single ditches and joint ditches that drain both counties. But like so much of our legislation on the subject of ditches, roads and schools and things of that sort, instead of being a systematic codification of the law, one legislature taking up the subject and dealing with it as a whole, the different legislatures have amended and repealed and enlarged, so that instead of being a system of laws,it is a patchwork,and the meaning and intent of the legislature is in very many instances anything but clear. But we are confronted with this question: “Are the commissioners of Wayne county in this case authorized tc construct a ditch in Holmes county?” If they can construct a ditch 100 yards long in Holmes county, they can construct a ditch of any length and of any size that they in their wisdom think is necessary for a sufficient outlet for the ditch in Wayne county.
Reed & Hanna, Attorneys for Plaintiff.
B. Eason, and W, Stilwell, Attorneys for Defendant.
£ We think that the doctrine of Home Buie ought to apply somewhat in this case; that the people of Holmes county ought to have some choice by electing the men to act as their county commissioners by whose judgment and discretion they are to be governed in county affairs,and that they ought not to be governed by the judgment and discretion of the commissioners of Wayne county, in whose choice and election they had no vote. That ought to be the law, and it is the law unless the legislature has clearly and unmistakably given the county commissioners of the upper county the right to come into the lower county and construct an improvement of this kind.
We have given these various statutes careful consideration. This matter was argued at length last summer before two members of the court as now constituted, at Newark, and it was argued at length at this term, and on careful consideration of all these sections of the statute we find nothing in the law that authorizes such a procedure on the part of the commissioners of the upper county outside of the bounds of their county. So that in this case there will be a decree for the plaintiff to the full extent prayed for enjoining any entry upon his lands for the purpose of constructing this ditch.